UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

_____

MORRIS COTTON

                      Plaintiff

V

BEAUMONT HEALTH, BEAUMONT
HEALTH SYTEMS, OAKWOOD
HEALTHCARE SYSTEM, KELLY SMITH in
her official capacity and individually,
SHERRY HUFFMAN, in her official capacity
and individually

                      Defendants
_____/

CIVIL ACTION

Case No.

Judge:

Mag. Judge:

RODNEY WILLIAMS (P47888)
Counsel for Plaintiff
615 Griswold Street; Suite 700
Detroit, Michigan 48226
(313) 309-7852
(313) 309-7853 (Fax)
AttorneyRodneyWilliams@hotmail.com

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

      NOW COMES Plaintiff, MORRIS COTTON (hereinafter "COTTON), by

and through undersigned counsel, and state the following  against BEAUMONT

HEALTH, BEAUMONT HEALTH SYSTEMS, OAKWOOD HEALTHCARE SYSTEM, KELLY SMITH and SHERRY HUFFMAN as their official capacity and as individuals.

## **PARTIES**

1. Plaintiff Morris Cotton (hereinafter Plaintiff) is an adult resident of the United States and residing in Farmington Hills, Michigan. At all times relevant to this Complaint, Plaintiff is recognized in the protected class as an African American male and at the time of the discrimination was 58 years old.

2. Beaumont Health is Michigan's largest health care system (based on inpatient admissions and net patient revenue) formed in 2014. It has eight hospitals, 168 health centers, nearly 5,000 physicians and 35,000 employees,

3. On or about September 1, 2014, Beaumont Health System joined with Botsford Health Care and Oakwood Healthcare System to form Beaumont Health.

4. That the DEFENDANT KELLY SMITH (hereinafter "SMITH") is a white female, citizen of the united States, residing in Michigan, and at all relevant times was the President of Oakwood Healthcare System and/or Senior Vice President and Division President of Beaumont Health employed by the CORPORATE DEFENDANTS.

5. That the DEFENDANT SHERRY HUFFMAN (hereinafter "HUFFMAN"), is a white female, citizens of the United States, residing in

Michigan; and at all relevant times material to their actions was the Director of Human Resources at the Oakwood Healthcare System and/or Beaumont Health employed by the CORPORATE DEFENDANTS.

6. That at all material times DEFENDANTS employed greater than twenty (20) employees and an employer intended by 42 U.S.C § 1983 and is an employer under Title VII of the Civil Rights Act of 1964, Age Discrimination Act of 1967 (ADEA), and Michigan Elliott-Larsen Civil Rights Act 453 of 1976.

## <u>JURISDICTION AND VENUE</u>

7. The lawsuit against the DEFENDANTS is filed on the basis of violation of 42 U.S.C. § 1983 under the United States Equal Protection Clause via the Fourteenth Amendment, Title VII of the Civil Rights Act of 1964 as amended, the Age Discrimination Act of 1967 (ADEA), and the and all common law claims of intentional infliction of emotional distress and negligent infliction of emotional distress.

8. This suit is brought under Federal Question Jurisdiction, 28 USC §1331 and 1343 (3).

9. This Court has supplemental jurisdiction over COTTON's state claims pursuant to 28 U.S.C. § 1367.

10. The Court has venue over this matter because a substantial part of the

events or omissions giving to the claims set forth herein occurred in this district, the unlawful employment practices alleged in this case occurred in this district, and there are employment records relevant to the claims maintained and administered by the Defendants in this district. 28 USC §1391(b), 42 USC §2000e-5(f) (3) and 2000e-16(c).

11. All conditions precedent to jurisdiction has occurred or has been met.

12. Charges of employment discrimination on the basis of race, color, age discrimination and retaliation were filed as dual charges with the Michigan Civil Rights Commission and with the Equal Employment Opportunity Commission (the "EEOC") within 300 days of the commission of the unlawful employment practices alleged in the complaint.

13. COTTON received his Notice of Right to Sue from the United States Employment Opportunity Commission "EEOC" on March 23, 2016 and the instant Complaint is filed within the time frame required by law.  (A true and accurate copy of the Notice of Right to Sue is attached as Exhibit A).

14.  The Plaintiff has exhausted all administrative remedies.


## NATURE OF CLAIMS AND RELIEF SOUGHT

15. That this is an action to seek redress from the DEFENDANTS acting under the color of law for intentional and unlawful violation of COTTON's civil

rights (discrimination based on race and age).

16.   That is an action brought under Title VII of the Civil Rights Act of 1964, under the Equal Protection Clause of the Fourteenth Amendment via 42 USC § 1983, the Age Discrimination in Employment Act (ADEA), and the Michigan Elliott-Larsen Civil Rights Act, for (1) unlawful race discrimination, and (2) unlawful age discrimination.

17. That also 42 U.S.C. § 1983 makes it illegal to create a hostile work environment and retaliate against the Plaintiff because the Plaintiff complained about discrimination, filed a charge of discrimination, and participated in an employment discrimination investigation/lawsuit, or communication such issues deemed protected under the First Amendment under the US Constitution.

18. Plaintiff additionally seeks injunction relief against Defendants from continuously discrimination against the Plaintiff in the future.

19.  The amount in controversy exceeds $75,000.


GENERAL ALLEGATIONS


20. COTTON is an African American male who was born in 1957.

21. COTTON was hired by the DEFENDANTS on or about July 1, 2007.

22. COTTON was the Director of Security and Safety for the Oakwood Hospital Dearborn from 2007 to 2013.

23. In that position , COTTON oversaw the full daily operational functions of the Security, Parking, and Valet 46- person department and was further responsible for all Oakwood Healthcare System Corporate Security policies and procedures, training, uniformed and contingent staff.

24. COTTON in addition to his position served for two years as a leader and "Administrator on Call".

25. COTTON consistently received excellent annual performance reviews and was selected to participate in the Oakwood Leadership Academy.

26. COTTON has always performed his assigned duties in a professional manner and was very well qualified for each position.

27. COTTON's stellar employment with the DEFENDANTS was without incident until about October 2013 when he suddenly began to be treated differently than the DEDENDANTS' other employees not in his protected classes and began to be subjected to discrimination on the basis of his race and age.

28.   Specifically, on or about October 2013, COTTON applied for a promotion as Administrator of Support Operations at the Oakwood Hospital.

29.   That COTTON interviewed for the Administrator of Support Operations position and although he was informed by members of the panel that he was best candidate he was not offered the position.

30.   That COTTON was thereafter informed that someone else was selected for the position but not provided with the selection name.

31.   That knowing COTTON was the best qualified, the DEFENDANTS thereafter froze the position to assure that COTTON would not uncover the DEFENDANTS selection.

32.   Thereafter, DEFENDANTS created nine (9) new executive leadership positions of which eight (8) were filled by white candidates, the only position not filled at all was the Administrator of Support Operations which the COTTON previously applied and was not selected.

33.   That for months the Administrator of Support Operations position went vacant concerning to several senior leaders.

34.   In August 2014, Oakwood Healthcare System, Botsford Medical Hospital, and Beaumont Hospitals joined together as one health system called Beaumont Health.

35.   That subsequently, a new posting for Director of Support Operations was advertised in August 2014 which had the identical requirements of the previously posted Administrator of Support Operations.

36.  That the COTTON immediately applied for the Director of Support Operations.

37.  That during the interview, COTTON was informed by DEFENDANT HUFFMAN that the position was not an administrator position, that if he wanted the position it would not be considered a promotion, that they could only offer him an $8000.00 pay increase, that if selected he would not be allowed to replace his current position,  that he would be responsible for 465 employees and accountable to ensure all eight (8) functional areas hit their target goals, and finally that he could not receive any bonuses for hitting targets/bench marks.

38. That the DEFENDANTS knew this was not equitable compared to the compensation package of COTTON's white counterparts.

39.  That COTTON informed DEFENDANTS of his dissatisfaction and inquired into the Administrator of Security position again to which DEFENDANT HUFFMAN replied that he would not be reconsider for that previously advertised the Administrator of Support Operations position and furthermore would not be provided equitable compensation for the Director of Support Operations position despite his credentials and performance. To which, COTTON withdrew his application.

40. That on January 19, 2015, COTTON was asked to report to his supervisor, Matt Legault, and was told he would now be reporting to Chris Soop, Soop, a 35 year old white male who was promoted by DEFENDANT SMITH to SMITH to General Manager-Crothal.

41.   That the position referred to above was not advertised and more telling contained the same duties previously described in the Administrator of Support Operations advertisement and more recently the Director of Support Operations.

42.  That despite having more seniority, credentials, and better performance than the similarly situated person not within COTTON's protected class, he was not permitted to apply for that position.

43.  That on or about March 24, 2015, COTTON was selected within the Beaumont Health System as System Security Deputy Director for Beaumont Health.

44.  That COTTON was still employed as an Oakwood Healthcare System employee with his office remaining at Oakwood Hospital location and responsible for the overall operations for the Security Department at Oakwood Dearborn.

45.   That on or about March 12, 2015, a memorandum was put out by DEFENDANT SMITH promoting Mr. Soop again, the same similarly situated

person not within COTTON's protected classes to the position of

leadership position of Administrator of Support Operations.

46.  Like the Regional Manager-Crothal position, COTTON was

not afforded the opportunity to apply for the Administrator of Security

vacancy which allowed the DEFENDANTS SMITH and HUFFMAN to

intentionally circumvent their employment policies.  This allowed a

situated person not within COTTON's protected classes and with less

qualifications than COTTON to gain a senior leadership position without

competition.

47.  Thereafter, DEFENDANT SMITH published a new

organizational chart showing Mr. Soop as her direct report and

simultaneously deleted the General Manager of Support Operations-

Crothal position.

48. The DEFENDANTS has exhibited a pattern and practice of

discrimination against COTTON as an African American male and over

the age of 40.

<u>COMMON ALLEGATIONS</u>

49. The DEFENDANTS have an unwritten policy and engages in practice

whereby COTTON as an African American employee and over the age of forty

(40) would be intentionally discriminated against.

50. That COTTON was then informed that the positions he was highly qualified for were either frozen, not advertised, or no promotion potential.

51. That the DEFENDANTS exhibited intentional disparity in hiring, promoting and retaining African American candidates in executive/senior leadership positions.

52. That DEFENDANTS Oakwood Healthcare System had over 430 Disparity in job posting/hiring, Oakwood failed to post (8) select positions which were filled by personal appointment.

53. That DEFENDANT SMITH and HUFFMAN employment practices as part of Oakwood Healthcare System adversely affected African American candidates and applicants.  All eight (8) senior leadership positions were filled by white candidates.

54. That DEFENDANTS employment policies dictate that no one can be hired without the position being posted and approved by DEFENDANT HUFFMAN internally for seven (7) days.

55. That DEFENDANT SMITH promoted and/or appointed all of her staff (approximately 10 individuals) since becoming Oakwood Healthcare System President in August 2013.

56. That all of DEFENDANT SMITH's appointment and promotions have been given to White employees.

57. That DEFENDANTS Oakwood Hospital & Medical Center now part of Beaumont Health have failed to promote any African American to executive positions.

58. That the DEFENDANTS have violated, and continue to violate, Title VII, the Equal Protection Clause, the ADEA, and Elliott Larsen Civil Rights Act.

## COUNT I.  VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964---RACE DISCRMINATION

59. Plaintiff incorporates by reference paragraphs 1-58.

60. COTTON is an African American male and as such is a member of a protected class.

61. At all material times. COTTON was an employee of DEFENDANTS and his employer covered by and within the meaning of Title VII of the Civil Rights Act of 1963, 42 U.S.C. 2000e.

62. COTTON was and is, qualified for the positions that he has held and those that he has applied for during his employment with the DEFENDANTS.

63. COTTON was subjected to disparate treatment by the DEFENDANTS, thereby altering the terms and conditions of his employment.

64. The acts, failures to act, practices and policies of the DEFENDANTS set forth above constitute intentional discrimination on the basis of COTTON's

race and age.

65. As a direct and proximate result of DEFENDANTS of the violations of 42 USC 2000e et seq. as referenced and cited herein, and as a direct and proximate result of the prohibited acts perpetrated against him, COTTON is entitled to all relief necessary to make him whole as provided for under 42 U.S.C. 2000e et. seq.

66. As a direct and proximate result of DEFENDANTS, COTTON has lost benefits and privileges of his employment and has been substantially and significantly injured in his career path.

67. As a direct and proximate result of DEFENDANTS actions, COTTON has suffered damages including but limited to loss of employment opportunity, loss of past and future employment income and fringe benefits, humiliation, and non-economic damages for mental and emotional stress.

68. COTTON has exhausted his administrative remedies and this count is timely brought.

WHEREFORE, Plaintiff requests trial by jury of all issues triable as of right, and:

i. Injunctive relief directing DEFENDANTS to cease and desist from all race discrimination;

ii. Back pay and all other benefits, perquisites and other compensation

for employment which Plaintiff would have received had he been promoted to the Administrator of Support Operations, plus interests, including but not limited to lost salary and bonuses;

iii. Front pay, including raises, benefits, insurance costs, benefit costs, and retirement benefits;

iv. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of DEFENDANTS actions.

v. Declaratory relief declaring the acts and practices of the DEFENDANTS to be in violation of statute cited above.

vi.  Reasonable attorney fees plus costs;

vii. Compensatory damages, and;

viii. Such other relief as this Court shall deem appropriate.

## COUNT II---VIOLATION OF THE ADEA

69.   Plaintiff incorporates by reference Paragraphs 1-68 of this Complaint as though fully set forth below.

70.  COTTON seeks recovery for all damages stemming from his non-selection of positions by the DEFENDANTS.

71.  At all material times. COTTON was an employee of the DEFENDANTS and his employer covered by and within the meaning of the

ADEA.

72.  COTTON is a member of the protected age class (over the age of 40).

73.  COTTON was well qualified for the positions that he applied with the DEFENDANTS.

74.  Despite his qualifications, COTTON has suffered adverse employment action in the form of the DEFENDANTS intentionally selecting a younger worker with less seniority, experience, and qualifications.

75.  That the younger person was under the age of forty (40) with inferior qualifications and performance but was hired in both jobs COTTON applied for or was otherwise the best candidate for but was not allow to fairly compete.

76.  The DEFENDANTS sought applicants that were outside of COTTON's protected class.

77.  The DEFENDANTS have discriminated against COTTON in the terms and conditions of his employment on the basis of his age, in violation of ADEA.

78.  The DEFENDANTS engaged in unlawful employment practices in violation of ADEA, 29 U.S.C. § 623, by intentionally non-selecting and/or circumventing the application process towards COTTON based on his age.

79.  That the DEFENDANTS violations of the law were knowing and willful.

80.  That the causation connection exists between COTTON's age and the

non-selection of positions he applied for as an employee of the DEFENDANTS.

81.  That as a result of the above-described violations of the ADEA,

COTTON has been damaged by the DEFENDANTS in the nature of lost wages,

salary, employment benefits, mental/emotional damages and other compensation

and is therefore entitled to recover actual monetary losses, interest at the

prevailing rate and attorney fees.

WHEREFORE, Plaintiff requests trial by jury of all issues triable as

of right, and:

i. Injunctive relief directing DEFENDANTS to cease and desist from

all race discrimination;

ii.  Back pay and all other benefits, perquisites and other

compensation for employment which Plaintiff would have received had he been

promoted to the Administrator of Support Operations, plus interests, including but

not limited to lost salary and bonuses;

iii. Front pay, including raises, benefits, insurance costs, benefit costs,

and retirement benefits;

iv. Reimbursement of all expenses and financial losses Plaintiff has

incurred as a result of DEFENDANTS actions.

v. Declaratory relief declaring the acts and practices of the

DEFENDANTS to be in violation of statute cited above.

vi. Reasonable attorney fees plus costs;

vii. Compensatory damages, and;

viii. Such other relief as this Court shall deem appropriate.

## COUNT III---VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT (ELCRA)

82.  Plaintiff incorporates by reference Paragraphs 1-81 of this Complaint as though fully set forth below.

83.  COTTON seeks recovery for all damages stemming from his non-selection of employment promotion by the DEFENDANTS.

84.  That at all material times, COTTON was an employee and the DEFENDANTS were an employer covered by and within the meaning of the ELCRA.

85.  COTTON is a member of two protected classes as African American and over the age of 40.

86.  COTTON was well–qualified for the positions he either applied for and those which the DEFENDANTS failed to advertise in violation of their internal policy.

87.  Despite his qualifications, COTTON has suffered adverse employment action in the form of the DEFENDANTS intentional discrimination.

88.  That the DEFENDANTS exhibited intentional disparity in hiring, promoting and retaining black candidates in executive/senior leadership positions.

89.  That DEFENDANT Oakwood Hospital & Medical Center has over 430 Disparity in job posting/hiring, Oakwood failed to post (8) select positions which were filled by personal appointment.

90.   That DEFENDANT Oakwood Healthcare System actions adversely affected black candidates and applicants.  All 8 positions were filled by white candidates.

91.  That DEFENDANTS employment policies dictate that no one can be hired without the position being posted and approved by DEFENDANT HUFFMAN internally for seven (7) days.

92.  That DEFENDANT SMITH promoted and/or appointed all of her staff (approximately 10 individuals) since becoming Oakwood President in August 2013.

93.  That all of DEFENDANT SMITH's appointment and promotions have been given to White employee.

94.  That DEFENDANTS Oakwood Healthcare System now part of Beaumont Health have failed to promote any African American to executive positions.

95.  That in addition is discrimination based on race, a younger person under

the age of forty (400 with inferior qualifications and performance was hired in above-referenced positions.

96.  That DEFENDANTS intentionally and secretly made their selections referenced in the lawsuit to avoid COTTON from obtaining a leadership position.

97.  That the DEFENDANTS discriminated against COTTON in terms and conditions of his employment and DEFENDANTS policies on the basis of his race and age, in violation of the ELCRA.

98.  That the DEFENDANTS engaged in unlawful employment practice in violation of ELCRA by non-selecting COTTON based on his race and age.

99.  That the DEFENDANTS violations of the law were knowing and willful.

100.  A causal connection exists between COTTON's race and age and the non-selection and/or failure to allow him to apply for several senior leadership positions by the DEFENDANTS.

101.  As a result of the above-described violations COTTON has been damaged by the DEFENDANTS in the nature of lost wages, salary, employment benefits, mental/emotional damages and other compensation and is therefore entitled to recover actual monetary losses, interest  at the prevailing rate and attorney fees.

WHEREFORE, Plaintiff requests trial by jury of all issues triable as

of right, and:

      i. Injunctive relief directing DEFENDANTS to cease and desist from all race discrimination;

      ii.  Back pay and all other benefits, perquisites and other compensation for employment which Plaintiff would have received had he been promoted to the Administrator of Support Operations, plus interests, including but not limited to lost salary and bonuses;

      iii. Front pay, including raises, benefits, insurance costs, benefit costs, and retirement benefits;

      iv. Reimbursement of all expenses and financial losses Plaintiff has incurred as a result of DEFENDANTS actions.

      v. Declaratory relief declaring the acts and practices of the DEFENDANTS to be in violation of statute cited above.

      vi. Reasonable attorney fees plus costs;

      vii. Compensatory damages, and;

      viii. Such other relief as this Court shall deem appropriate.

## COUNT IV---HOSTILE WORK ENVIRONMENT—DEFENDANT KELLY SMITH

102.  Plaintiff incorporates by reference Paragraphs 1-101 of the complaint as though fully set forth below.

103.  DEFENDANT SMITH created a hostile work environment in Violation of 42 U.S.C. § 1983 under the United States Equal Protection Clause.

104 At all material times, DEFENDANT SMITH was President of the Oakwood Healthcare System and/or Hospital & Medical Center for the DEFENDANTS.

105. All discriminatory and harassing actions DEFENDANT SMITH took against COTTON were only made possible due to the authority DEFENDANT SMITH obtained through her position given to her by CORPORATE DEFENDANTS.

106. DEFENDANT SMITH discriminated against and harassed COTTON in all of the methods described herein described causing unnecessary complaints to be filed against COTTON to potentially impact his continued employment with DEFENDANTS and the following:

      i. That on December 23, 2015, COTTON filed his initial complaint with the EEOC against Oakwood Healthcare Systems and Beaumont Health.

      ii. That on March 27, 2016, COTTON received his Right to Sue letter from the U.S. Equal Employment Opportunity Commission.

      iii. That in April 2016, COTTON was asked by his supervisor to

provide DEFENDANT SMITH with an organization chart indicating his duties and responsibilities. DEFENDANT SMITH further asked for the amount of time COTTON spent at each Beaumont location.  Once COTTON provided her the requested information, on April 19, 2016, DEFENDANT KELLY sent out an email to the other Beaumont Hospital Presidents telling them she was going to charge them with 10% of my salary to each site in an effort to cause dissension in COTTON's department and with the other Beaumont locations.

iv. That on April 29, 2016, COTTON received an email from DEFENDANT SMITH accusing him of not notifying her or the administrative leadership team of a corporate security decision regarding a pay increase for all Beaumont Health Security staff.  She further stated COTTON was operations and that he reported only to the Beaumont Dearborn site.

v. That DEFENDANT SMITH falsely stated that COTTON failed to notify HR of the delivery of memos to all security staff relating to the new Beaumont Health pay raises.   COTTON responded to DEFENDANT SMITH's allegations and provided her with documented emails where DEFENDANTSNANT HUFFMAN was asked to inform the site administrators and not COTTON.  Secondly COTTON forwarded her an email from the site HR director (Dave Squire) who concurred with COTTON.  After sending this to DEFENDANTS SMITH she responded by saying COTTON disobeyed orders.

vi. That on May 6, 2016, per COTTON's conversation with Security Manager Tina Alexander she was approached by DEFENDANT SMITH's secretary (Susan Cherokee) in the hallway letting Tina know that DEFENDANT SMITH had her to remove COTTON's name from the Senior Leadership list and the leadership email threads being sent out to all hospital leaders. Tina stated Susan was unsure why DEFENDANT SMITH was removing his name from the list. As of May 6, 2016, COTTON is still performing the duties as a senior leader and should not have been removed from the list, at no time was COTTON notified or informed by DEFENDANT SMITH or my immediate supervisor Chris Soop.

107. That above mentioned acts by DEFENDANT SMITH is a direct act of reprisal for COTTON filing his EEO complaint and in an attempt to create a hostile work environment.

108. That if COTTON were a White senior leaders with the DEFENDANTS, he would not have been subjected to unwelcomed scrutiny with the intent to intimidate and harass him.

109. That if COTTON were White he would not have had numerous of his concerns go unanswered and/or ignored. Furthermore, he would not have been denied the opportunity to receive appropriate promotions and assistance needed.

110. DEFENDANT SMITH actions were intentional, with reckless indifference to COTTON's rights and sensibilities.

111. As a direct and proximate result of said acts by DEFENDANT SMITH, COTTON suffered and will continue to suffer lost benefits, pension benefits, loss of earning capacity, loss of dignity and enjoyment of life, extreme mental and emotional distress, pain and suffering, severe nervousness, embarrassment, and humiliation.

112. CORPORATE DEFENDANTS encouraged, condoned or directly participated in the discriminatory and harassing actions against COTTON.

<u>COUNT V---HOSTILE WORK ENVIRONMENT –DEFENDANT SHERRY HUFFMAN</u>

113.  Plaintiff incorporates by reference paragraphs 1-112 as if fully restated herein.

114.  DEFENDANT HUFFMAN created a hostile environment in violation of 42 U.S.C. § 1983 under the United States Equal Protection Clause.

115. At all material times, DEFENDANT HUFFMAN was the Director of Human Resources for the Oakwood Healthcare System and/or Medical & Health Center.

116. All discriminatory and harassing actions DEFENDANT HUFFMAN took against COTTON was only made possible due to the authority DEFENDANT HUFFMAN obtained through her position given to her by DEFENDANT SMITH and CORPORATE DEFENDANTS.

117.  DEFENDANT HUFFMAN discriminated against and create a hostile work environment in all of the methods described herein, including harassing emails, being a surrogate for DEFENDANT SMITH in an attempt to belittle COTTON including:

i. That after COTTON filed his EEO complaint and received his Right to Sue Letter, DEFENDANT HUFFMAN singled out COTTON alleging that he failed to turn in training sheet for completing their "Just Culture Training" but stated "don't worry about other department".

ii. Every Wednesday Departments have a management team meeting but effective at the May 11, 2016 meeting, COTTON's name was removed from the list, while other Senior Leaders Directors and Leader Managers were still on the list.  At the meetings COTTON had to sign in at the bottom of the last page. No reason was given nor was COTTON ever informed he was removed from the list.

iii. That on May 16, 2016, COTTON dropped his prescription in the pharmacy and the representative informed him that he had to pay an extremely

large deductible, the pharmacist was mistaken and after making a call discovered she had made a mistake.  However, on May 25 2016 DEFENDANT HUFFMAN called COTTON and his supervisor Chris Soop stating a complaint had been made against COTTON.  COTTON explained to DEFENDANT HUFFMAN that he was not rude but the worker was rude. On May 26, 2016 he provided his supervisor a statement but was informed that DEFENDANT HUFFMAN alleged hat COTTON was retaliating against the worker.  However, DEFENDANT HUFFMAN only goal was to create the environment in order to cast suspicion on COTTON's ethics and integrity.

118.  DEFENDANT HUFFMAN directly participated in the discriminatory and harassing actions against COTTON.

119.  Further, DEFENDANT HUFFMAN discriminated against and harassed COTTON because of his race and age, as also described herein, and in violation of federal statutes.

120. The federal statutes prohibiting discrimination and harassment based on race and age are well known and/or a reasonable person should have known that such discriminatory actions are prohibited as a matter of law.

121. As a direct and proximate result of said acts and omissions of DEFENDANT HUFFMAN, COTTON was intentionally denied promotion opportunities and has suffered and will continue to suffer lost wages, pension

benefits, loss of earning capacity, loss of dignity and enjoyment of life, extreme mental and emotional distress, pain and suffering, severe nervousness, embarrassment and humiliation requiring professional medical treatment and medication all past, present, and future.

122. All retaliatory actions DEFENDANT HUFFMAN took against COTTON was only made possible due to the authority DEDENDANT SMITH give DEFENDANT HUFFMAN obtained through her position given to her by CORPORATE DEFENDANTS who knew or should have known of these illegal and discriminatory acts.

123.  CORPORATE DEFENDANTS encouraged, condoned or directly participated in the discriminatory actions against COTTON.

124.  The discrimination COTTON suffered at the hands of DEFENDANTSANT HUFFMAN interfered with COTTON's enjoyment of the terms, conditions, privileges and benefits of COTTON's employment, among other things.

### JURY DEMAND

125. Plaintiff request a Jury Trial

### REQUEST FOR RELIEF

WHEREFORE, PLAINTIFF REQUESTS that this court enter judgment against Defendants as follows: A judgment for lost wages and benefits, past and

future, in whatever amount he is found to be entitled; compensatory damages in

whatever amount he is found to be entitled; punitive and exemplary damages

commensurate with the wrong and DEFENDANTS ability to pay; an award of

interest, cost and reasonable attorney fees, and whatever other equitable relief

appears appropriate at the time of trial.

Respectfully submitted,


Dated:  6/16/2016                    /S/Rodney Williams
                                     Rodney Williams P47888
                                     Attorney for Plaintiff
                                     615 Griswold Street: Suite 700
                                     Detroit, Michigan 48226
                                     (313) 309-7852
                                     (313) 309-7853
                                     AttorneyRodneyWilliams@hotmail.com


Certification of Service: I certify that on June 16, 2016, I electronically filed the

foregoing papers with the Clerk of the Court using the ECF system, which will

provide electronic copies to counsels of record whom are ECF participants.


/s/Rodney Williams
RODNEY WILLIAMS
Attorney for Plaintiff